MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN WYNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09-cv-3803 |
| v. ) | |
| ) | Judge John W. Darrah |
| RELIANCE STANDARD LIFE ) | |
| INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Kevin Wynn, filed a claim for short-term disability benefits under an employee-welfare benefit plan, which was maintained by the Brotherhood of Locomotive Engineers and Trainmen ("BLET") for its members and insured by the Defendant, Reliance Standard Life Insurance Company ("Reliance Standard"). The benefit plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Wynn's claim was denied, and he brings this action to challenge the decision after exhausting his administrative remedies. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), 1132(f). Presently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, Reliance Standard's Motion is granted, and Wynn's is denied.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.[1]

Wynn was employed as a conductor with Union Pacific Railroad Company until he stopped working on June 22, 2008; and he was a member of the BLET. (Def. 56.1(a) ¶ 5.) As a member of the BLET, Wynn was covered by a short-term disability policy written by Reliance Standard ("the Plan").

Beginning March 14, 2008, Wynn was off work and undergoing treatment by multiple specialists for uncontrolled hypertension, atrial fibrillation, and severe headaches; he was released to return to work on June 14, 2008. (Pl. 56.1(a) ¶ 10.) Wynn worked 12 hours on June 15, 2008, which reinstated his coverage under the Plan. (Pl. 56.1(a) ¶ 11.) For purposes of the claim that is the subject of the instant suit, Wynn's last day of work was June 22, 2008. (Def. 56.1(a) ¶ 17.) No one told him to stop working at that time. (Def. 56.1(a) ¶ 18.)

On or about November 3, 2008, Wynn submitted a claim for short-term disability benefits, which indicated that July 2008 was the date he was first unable to work because of his claimed disability. (Def. 56.1(a) ¶ 19.) Wynn included with his claim a report

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

2

from Dr. Lawrence Zachary, diagnosing Wynn as having had pain and infection in his arms and abdomen and indicating that he had an excision of excess skin. (Def. 56.1(a) ¶ 20.) Dr. Zachary's form, which is signed October 29, 2008, states that Wynn's symptoms first appeared on July 28, 2008, and that Wynn was continuously unable to work from July 28, 2008 to August 11, 2008.[2] (Def. 56.1(a) ¶¶ 21-22.) Wynn had consulted with Dr. Zachary regarding this excess skin removal at some point after a gastric-bypass surgery he had in 2006. (Def. 56.1(a) ¶ 23.)

On November 11, 2008, Reliance Standard acknowledged Wynn's application for benefits and advised him that if any additional information was required after initial review, the claims examiner would contact the employer, the attending physicians, and/or Wynn, depending on what information was needed. (Pl. 56.1(a) ¶ 14.) On November 12, 2008, Reliance Standard requested that Wynn provide records involving a previous disability claim that was denied on the basis that it arose from a pre-existing condition. (Pl. 56.1(a) ¶ 15.) Reliance Standard also notified Wynn that if it did not receive all requested information within 45 days from the date of the letter (i.e., December 27, 2008), Wynn's claim would be considered incomplete and his file may be closed. (Pl. 56.1(a) ¶ 16.) In subsequent letters, dated December 1 and December 3, Reliance Standard informed Wynn that if it did not receive the requested information within 15 days of those letters, his file may be closed. (Pl. 56.1(a) ¶ 16.)

---

[2] The form is difficult to read. The date may be August 4, 2010. Wynn simply states, "It appears that 7-28-08 is written over another date." (Pl. Resp. to Def. 56.1(a) ¶ 21.) At any rate, the date by which Wynn would have been able to return to work after his skin excision is not material.

In support of his claim, Wynn submitted a note from a Dr. Hollins, dated December 18, 2008, which states in full:

> Mr. Kevin Wynn was treated by me in my office for a burn on his right hand on July 14, 2008. The burn was severe enough that it would have prevented him from working. According to my notes he was schedule [sic] to be in my office on 06/23/2008. He sustained the burn approximately 14 days prior to the visit.

(Def. 56.1(a) ¶ 33; Pl. 56.1(a) ¶ 22.)

On December 22, 2008, Reliance Standard requested and received additional medical information from Dr. Hollins regarding Wynn's medical treatment from July 14, 2008, forward.[3] (Pl. 56.1(a) ¶ 19.) On December 23, 2008, in the course of reviewing Wynn's claim, a medical examiner opined that there was nothing to support any impairment prior to July 14, 2008, when Wynn sought treatment for his burn. (Pl. 56.1(a) ¶ 21.) By letter dated December 23, 2008, Reliance Standard then notified Wynn of its determination that he was not eligible for benefits. (Def. 56.1(a) ¶ 24.) The letter explained that there was no evidence on file to support Wynn's claimed disability prior to July 14, 2008, or his inability to perform his job as of June 23, 2008, when he stopped working. (Def. 56.1(a) ¶ 25; Pl. 56.1(a) ¶ 20.) Reliance Standard never closed Wynn's file before denying his request for benefits. (Pl. 56.1(a) ¶ 17.)

Wynn appealed the denial of his claim by letter, dated December 26, 2008. (Def. 56.1(a) ¶ 26.) In his appeal letter, Wynn stated that beginning June 22, 2008, he had been

---

[3] The parties dispute the timing of Dr. Hollins's transmission of Wynn's records relative to Reliance Standard's request. The fax headings show that Reliance Standard requested treatment records from Dr. Hollins at 12:04 on December 22, 2008, and that it received Wynn's medical record at 10:13 on December 22, 2008. Wynn argues that this supports an inference that Dr. Hollins's fax was not in response to the request sent on December 22, 2008.

on "medical leave" due to second-degree burns on his right hand, which prohibited him from working. (Def. 56.1(a) ¶ 27.) Wynn stated that he did not consult a doctor immediately after sustaining the burn because he "attempted to take care of it [him]self but to no avail" and that he went to the doctor when the wound did not heal. (Def. 56.1(a) ¶¶ 29-30.) Dr. Hollins's notes from Wynn's July 14 appointment indicate that the wound was "epithelializing . . . no sign of infection." (Def. 56.1(a) ¶¶ 31-32.)

On January 30, 2009, Reliance Standard sent a letter to Wynn, notifying him of its determination to uphold the denial of benefits. (Def. 56.1(a) ¶ 35.) The letter stated that Wynn's file was referred to Reliance Standard's Quality Review Unit to conduct a review separate from the individual who made the original decision to terminate his benefits. (Def. 56.1(a) ¶ 34.) The letter informed Wynn that he failed to provide "satisfactory proof of Disability" or evidence that he was "under the Regular Care of a Physician" when he stopped working on June 22, 2008. (Def. 56.1(a) ¶ 36.) The letter further explained that Wynn was therefore not in the eligible class of members for insurance coverage and that there was no evidence that Wynn was unable to work as a result of his burn injury. (Def. 56.1(a) ¶¶ 37, 38.)

The Plan contains the following Insuring Clause:

**INSURING CLAUSE:** We will pay a benefit if an Insured:

(1) is Disabled as the result of a sickness or Injury covered by this Policy;
(2) is under the Regular Care of a Physician;
(3) has completed the Elimination Period; and
(4) submits satisfactory proof of Disability to us.

(Def. 56.1(a) ¶¶ 1, 9.)

"Disabled" and "Disability" are defined terms under the Plan: "Disabled" and "Disability" mean that as a result of an injury or sickness, during the elimination period and during the period for which a benefit is payable, an insured cannot with reasonable accommodations, as defined under the Americans With Disabilities Act ("ADA") of 1990, as amended, perform the material duties of his/her own job. (Def. 56.1(a) ¶ 10.) The Plan also provides, "We consider the Insured to be Disabled if due to any Injury or Sickness he/she is capable of only performing the material duties of his/her Own Job on a part-time basis or some of the material duties on a full-time basis." (Pl. Resp. to Def. 56.1(a) ¶ 10.)

"Regular Care" is also defined:

> "Regular Care" means Treatment that is administered as frequently as is medically required according to guidelines established by nationally recognized authorities, medical research, healthcare organizations, governmental agencies or rehabilitative organizations. Care must be rendered personally by the Insured's Physician according to generally accepted medical standards in the Insured's locality, be of a demonstrable medical value and be necessary to meet his/her basic health needs.

(Def. 56.1(a) ¶ 11.)

The Plan provides that the following persons are eligible for insurance: "ELIGIBLE CLASSES: Full-time members in good standing with [the BLET] who are Actively at Work and earning an annual salary of at least $15,000.00, except any person employed on a temporary or seasonal basis." (Def. 56.1(a) ¶¶ 12-13.)

"Actively at Work," in turn, means "that on any given day the Insured is actually performing the material duties pertaining to his/her job in the place where and the manner and number of hours in which his/her job is normally performed. This includes approved

time off for vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness." (Def. 56.1(a) ¶ 14.)

Among those events that will terminate insurance under the Plan is "the date the Insured ceases to meet the Eligibility Requirements." (Def. 56.1(a) ¶ 15.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

A denial of benefits under an ERISA plan is reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine benefit eligibility or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such discretionary powers are given to the fiduciary, the court will only overturn the determination if it was arbitrary and capricious. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000) (*Herzberger*). A decision to deny benefits will be upheld "so long as that decision has 'rational support in the record.'" *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (quoting *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)).

In this case, the Plan expressly grants discretionary authority to Reliance Standard:

> Reliance Standard Life Insurance Company and/or its appointed claims administrator shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. Reliance Standard Life Insurance Company is not the Plan Administrator. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(Def. 56.1(a) ¶ 16.)

Therefore, the denial of Wynn's claim should be reviewed under an arbitrary-and-capricious standard. *Herzberger*, 205 F.3d at 329. However, because Reliance Standard both determines eligibility for benefits and pays those benefits under the Plan, it is presumed to be acting under an inherent conflict of interest. *See Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). Under these circumstances, the court should employ a "combination-of-factors method of review," in which the conflict is but one of any number of case-specific factors that may be considered in reviewing the denial of benefits. *Id.* at 2351.

## ANALYSIS

Even taking Reliance Standard's conflict of interest into consideration, Wynn cannot demonstrate that Reliance Standard acted arbitrarily and capriciously in denying his claim for benefits under the plan. He applied for benefits on November 3, 2008, based on a period of disability that purportedly began in July 2008. He supported his claim with a note from Dr. Zachary, indicating that Wynn underwent surgery on July 28, 2008, and was unable to work as of that date. Wynn's form also indicates that the date he last worked was June 22, 2008. The Plan clearly indicates that only those persons "Actively at Work" are eligible for benefits. Because Wynn was not "Actively at Work" within the meaning of the Plan on July 28, 2008, he was not eligible for benefits based on a claimed disability that began on that date.

Wynn does not contend otherwise. Instead, he asserts that he was continuously disabled as of June 23, 2008, when he sustained a burn to his wrist. But Wynn's claim did not assert a disability date of June 23, 2008; it claimed disability as of July 2008.

Moreover, the only support for Wynn's belated contention that he was continuously disabled as of June 23 is a note from Dr. Hollins, dated December 18, 2008 – well after he filed his claim – which states that he was treated for a burn on July 14, 2008, that he sustained the burn approximately 14 days prior to the visit, and that "[t]he burn was severe enough that it would have prevented him from working." (Def. 56.1(a) ¶ 33.) Notably, Dr. Hollins's note does not state that Wynn was injured on June 23, much less that he was unable to work as of that date. Indeed, Dr. Hollins estimated that the burn occurred approximately one week *after* June 23. Nor does the note indicate that Wynn's burn would have prevented him from working for the entire period between June 23, 2008, and July 28, 2008. Moreover, this evidence of a single visit to the doctor does not indicate that Wynn was under the "Regular Care" of a physician, which is a clear prerequisite to benefits under the Plan and is incorporated into the definition of "Disabled."

Accordingly, Reliance Standard determined that there was no evidence on file to support a disability prior to July 14, 2008. Wynn argues that his claim was denied on a "bare assumption" that he was not disabled from June 23, 2008, through July 28, 2008. Also, in discussing the medical review conducted for Reliance Standard by Nurse Lubrecht, Wynn states, "There was no reference to any record or consult with Dr. Hollins or any physician that would support Nurse Lubrecht's finding." (Pl. Mot. for Summ. J. 10.) In so arguing, Wynn misapprehends the burden of making a claim for benefits. The Plan provides that the claimant must submit satisfactory proof of disability. (*See* Def. 56.1(a) ¶ 9.) Furthermore, an applicant for benefits under an ERISA plan would bear the

burden of proving eligibility at trial. *See Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007). Nurse Lubrecht did not make a finding that Wynn was not disabled; she simply found that the record did not support his claim that he was disabled prior to July 14. In the absence of support to the contrary, Reliance Standard was not required to accept Wynn's post-claim assertion that the burn on his wrist rendered him unable to perform his job from June 23, 2008, through July 28, 2008. Thus, Reliance Standard cannot be said to have acted arbitrarily and capriciously in denying his claim for benefits under the Plan.

Wynn also argues that he did not receive proper notice of the reasons for his denial and that Reliance Standard should have tolled its benefits determination in order to obtain more information. Neither argument is persuasive.

By law, the Plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant"; the Plan must also provide a reasonable opportunity for review. 29 U.S.C. § 1133. Federal regulations promulgated pursuant to ERISA set forth detailed notice requirements:

> The notification shall set forth, in a manner calculated to be understood by the claimant –
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;

> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> * * * *

29 C.F.R. § 2560.503-1(g).

Wynn has not shown that notice was improper in this case. In its December 23 letter, Reliance Standard noted that Wynn's claim form indicated that his last day of work was June 22, 2008, and that he was continuously disabled as of July 28, 2008. The letter also acknowledged Wynn's note from Dr. Hollins, dated July 14, 2008, but stated that there was no medical documentation to support his inability to perform the material duties of his job as of June 23, 2008. The Plan's definition of "Disabled" was included in the letter. No additional information was requested, and the letter provided instructions regarding the process for requesting a review and filing a civil action.

Wynn points to the fact that the subsequent denial of his appeal cited additional portions of the Plan regarding "Eligible Classes," "Actively at Work," and "Regular Care" and implies that those terms should have been identified in his initial denial in order to allow him to present additional information to support his claim. But these provisions were identified in response to Wynn's request for an appeal. In making that request, Wynn claimed that he was on medical leave due to a second-degree burn as of June 22, 2008, and asserted that he delayed seeing a doctor because he tried to take care of the wound himself. In order to address those issues, Reliance Standard cited additional

Plan provisions. The resolution of Wynn's initial claim was simple. He stopped working on June 22, 2008, and failed to provide sufficient support to show that he was "Disabled" as of that date. No further information was necessary.

Wynn also argues that Reliance Standard should have tolled its decision on his claim until it received additional information. The law does not require it to do so. Wynn misleadingly asserts that ERISA regulations provided that "the benefit determination shall be tolled until the information necessary to make a determination is received from the claimant." (Pl. Resp. Br. 3.) First, Wynn has not identified what additional information was necessary for Reliance Standard to make its decision. All requested information, including medical records from Dr. Zachary and Dr. Hollins, had been provided.[4] Second, Wynn misstates the applicable regulation, which provides, "In the event that a period of time is extended as permitted pursuant to paragraph (f)(2)(iii) or (f)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, *the period for making* the benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." 29 C.F.R. § 2560.530-1(f)(4) (emphasis added). The italicized words – omitted by Wynn – indicate that the 45-day deadline for the Plan to issue a decision is tolled if the Plan has to extend the time for decision due to the claimant's failure to provide necessary information. No

---

[4] As discussed above, Wynn implies that Reliance Standard never received the records it requested from Dr. Hollins on December 22, 2008. The December 22 request was for medical records for the period *beginning* July 14, 2008. Reliance Standard based its decision on Wynn's failure to establish that he was disabled *before* July 14, 2008. Wynn has not indicated what missing information would have been supplied or how that information would have affected Reliance Standard's determination.

13

such extension was deemed necessary in this case, and nothing in that regulation provides that the Plan must delay its determination to wait for additional information it does not believe necessary to make a decision.

Thus, Reliance Standard did not act arbitrarily and capriciously in denying Wynn's claim for benefits. The only evidence supporting Wynn's belated claim that he was disabled as of June 23, 2008, is the note from the doctor, stating that his wrist was burned and healing as of July 14, 2008, that the wound was sustained approximately two weeks prior to that date, and that the burn would have prevented him from working at some indeterminate point in time. The presence of a conflict of interest by Reliance Standard does not alter the outcome, because there is no other factor weighing in Wynn's favor. Even adding Reliance Standard's conflict of interest into the balance, there was no abuse in discretion in denying Wynn's disability claim. *Cf. Gutta v. Standard Select Tr. Ins. Plans*, 285 Fed. Appx. 302, 302 (7th Cir. 2008) ("Here, even acknowledging Standard's dual role and thus conflict of interest, we do not find the other factors to be closely balanced."). Accordingly, Reliance Standard is entitled to judgment as a matter of law.

Reliance Standard also requests fees and costs, which the Court, in its discretion, may award to the prevailing party. *See* 29 U.S.C. § 1132(g)(1). The request is denied without prejudice. Any request for fees and costs must be brought by separate motion and must comply with Local Rule 54.3, which will be strictly enforced.

## CONCLUSION

For the reasons discussed above, Reliance Standard's Motion for Summary Judgment is granted; Wynn's Motion for Summary Judgment is denied. Reliance Standard's request for fees and costs is denied without prejudice to raise the issue in a proper motion pursuant to Local Rule 54.3.

Date: June 8, 2010

JOHN W. DARRAH
United States District Court Judge